UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT WARRINGTON,

          Plaintiff,

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al.,

          Defendants.

CIVIL ACTION NO. 1:19-CV-00237

(MEHALCHICK, M.J.)

**MEMORANDUM**

Before the Court in this civil rights case is a motion for summary judgment filed by Defendants Bradley Booher, Tammy Ferguson, Scott Klinefelter, Michael McCoy, Daniel Myers, and Bobbi Jo Salamon (hereinafter, collectively known as "Defendants"). (Doc. 33). Plaintiff Scott Warrington ("Warrington") brings this action under 42 U.S.C. § 1983. (Doc. 7). Defendants claim that they are entitled to judgment as a matter of law and that no material facts remain in dispute.[1] (Doc. 33, at 1). For the reasons set forth herein, it is ordered that Defendants' motion for summary judgment is GRANTED. (Doc. 33).

I. **BACKGROUND AND PROCEDURAL HISTORY**

This factual background is taken from Defendants' statement of material facts and accompanying exhibits. (Doc. 35; Doc. 35-1; Doc. 35-2; Doc. 35-3; Doc. 35-4; Doc. 35-5; Doc. 35-6). Pursuant to Local Rule 56.1, Warrington has provided his response to

---

[1] In his Answer to Statement of Facts, Warrington "concedes the granting of summary judgment as to Defendant Booher." (Doc. 43, ¶ 23). As such, summary judgment is GRANTED as to the claims against Defendant Booher and the claims against Defendant Booher are DISMISSED. (Doc. 33).

Defendants' statement of facts and has provided accompanying exhibits. (Doc. 43; Doc. 43-1; Doc. 43-2; Doc. 43-3; Doc. 43-4; Doc. 43-5). Where Warrington disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Warrington as the non-moving party, with all reasonable inferences drawn in his favor.

Warrington's deposition was taken on February 24, 2021. (Doc. 35, ¶ 1; Doc. 43, ¶ 1). Warrington admitted that he has no recollection of the incident that forms the basis of his complaint, and no memories have come back to him since the incident. (Doc. 35, ¶ 2; Doc. 43, ¶ 2). On April 3, 2017, Warrington was spontaneously assaulted by another inmate, David Fry ("Fry"). (Doc. 7, at 5). Warrington recalls events prior to the incident, but not afterwards. (Doc. 35, ¶ 3; Doc. 43, ¶ 3). Warrington did not know Fry, but saw him when he came on the block the day before. (Doc. 35, ¶ 4; Doc. 43, ¶ 4). Warrington admitted that there was nothing about Fry's appearance of actions that concerned him before the incident. (Doc. 35, ¶ 5; Doc. 43, ¶ 5). When Warrington was in line for lunch, he did not know where Fry was located. (Doc. 35, ¶ 6; Doc. 43, ¶ 6). Warrington had no consciousness of Fry before the attack. (Doc. 35, ¶ 7; Doc. 43, ¶ 7). Warrington admitted that Fry had not threatened him before the attack, and he had no idea that Fry was going to attack. (Doc. 35, ¶ 8; Doc. 43, ¶ 8). Warrington was never told by other inmates why Fry attacked him. (Doc. 35, ¶ 9; Doc. 43, ¶ 9). Warrington

had never known that a weapon was available to Fry or anyone else before the attack.[2] (Doc. 35, ¶ 10; Doc. 43, ¶ 10). In his Complaint at paragraph 17, Warrington alleged that Fry had threatened violence upon his release from solitary confinement, but admitted during his deposition that he did not know his source of that information. (Doc. 35, ¶ 11; Doc. 43, ¶ 11). Warrington was not threatened by Fry, nor was he told that Fry had threatened anyone else before the incident. (Doc. 35, ¶ 12; Doc. 43, ¶ 12). Warrington had no interactions with Fry before the attack. (Doc. 35, ¶ 13; Doc. 43, ¶ 13). Warrington admitted there were times where inmates were attacked by other inmates and no one knew why it happened.[3] (Doc. 35, ¶ 14; Doc. 43, ¶ 14). Warrington admitted that he was not in a category of prisoners who are looked down upon by other inmates, including child molesters, sexual offenses, or informers. (Doc. 35, ¶ 15; Doc. 43, ¶ 15). Warrington agreed that he had not contributed to his attack. (Doc. 35, ¶ 15; Doc. 43, ¶ 15). Warrington admitted that none of the Defendants were in the area when he was attacked. (Doc. 35, ¶ 16; Doc. 43, ¶ 16). Warrington has not had memory problems except for the time from the incident until after his hospital stay. (Doc. 35, ¶ 17; Doc. 43, ¶ 17). Warrington did not file a grievance regarding this incident, nor did he appeal any grievance to final review.[4] (Doc. 35, ¶ 18; Doc. 43, ¶ 18).

The deposition of Bobbi Jo Salamon ("Salamon") was taken on March 5, 2020. (Doc.

---

[2] Warrington admits this fact but notes "it is not uncommon for inmates to improvise weapons out of things at hand." (Doc. 43, ¶ 10; Doc. 43-1, at 104).

[3] Warrington admits this fact and provides Fry's misconduct history as an example of prior misconducts during his confinement. (Doc. 43, ¶ 14; Doc. 43-2, at 1-12).

[4] Warrington admits this fact in part stating that "[n]o administrative remedy existed that would have undone the assault [he suffered], so he was under no obligation to exhaust the administrative grievance process." (Doc. 43, ¶ 18); *see infra*.

35, ¶ 19; Doc. 43, ¶ 19). The deposition of Salamon did not demonstrate that Salamon was personally involved in the circumstances leading to the assault on the Plaintiff.[5] (Doc. 35, ¶ 20). The testimony of Salamon showed that she was a part of the Program Review Committee at the time of Fry's incarceration at State Correctional Institution at Benner ("SCI-Benner").[6] (Doc. 35, ¶ 21; Doc. 43, ¶ 21). The deposition of Major Bradley Booher ("Booher") was taken on March 5, 2020. (Doc. 35, ¶ 22; Doc. 43, ¶ 22). The deposition of Booher demonstrates that his only involvement in this case was investigating the incident after it occurred. (Doc. 35, ¶ 23; Doc. 43, ¶ 23). The deposition of Captain Scott Klinefelter ("Klinefelter") was taken on March 5, 2020. (Doc. 35, ¶ 24; Doc. 43, ¶ 24). Klinefelter was the Security Captain at the time of the incident. (Doc. 35, ¶ 25; Doc. 43, ¶ 25). Klinefelter testified that cell searches by Staff under his supervision were uncommon in the RHU because the RHU Staff would perform such searches. (Doc. 35, ¶ 26; Doc. 43, ¶ 26). Klinefelter's involvement in this incident was to investigate the weapon used by Fry. (Doc. 35, ¶ 27; Doc. 43, ¶ 27). Klinefelter testified that

---

[5] Warrington denies this fact, averring that "Salamon, as Deputy Superintendent for Centralized Services, was the highest-ranking member of SCI[-]Benner's Program Review Committee ("PCR"), which was responsible for reviewing the highest security level inmates in the prison for release consideration and adjustment." (Doc. 43, ¶ 20; Doc. 43-1, at 30, 33-34). Warrington also contends that "Salamon and the PRC chose not to send Inmate Fry back to the Special Management Unit ("SMU") at [State Correctional Institution at] Fayette – from which he had just been received – despite his extraordinary history of violence in and out of custody, his extensive misconduct history while incarcerated, and his obvious maladjustment at SCI[-]Benner and conflicts with other inmates on the block." (Doc. 43, ¶ 20; Doc. 43-1, at 63-64). Warrington argues that "Salamon and the PRC instead granted Inmate Fry's release from the Restricted Housing Unit ("RHU") to the Plaintiff's cell block in general population, where Inmate Fry brutally assaulted the Plaintiff the day after his release from the RHU." (Doc. 43 ¶ 20; Doc. 43-3, at 1; Doc. 43-4, at 1).

[6] Warrington admits this fact in part, stating that "Salamon, as Deputy Superintendent for Centralized Services, was the highest-ranking member of the PRC." (Doc. 43, ¶ 21).

4

the investigation did not determine how Fry came into possession of the weapon since Fry refused to give a statement.[7] (Doc. 35, ¶ 28; Doc. 43, ¶ 28). Warrington has not produced evidence that the Defendants were aware of a risk that Fry would assault the Plaintiff or any other inmate.[8] (Doc. 35, ¶ 29).

II. **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000).

---

[7] Warrington admits this fact in part stating that "Klinefelter testified at deposition that the support brace Inmate Fry used as an improvised weapon had to have been removed by an inmate." (Doc. 43, ¶ 28; Doc. 43-5, at 31).

[8] Warrington denies this fact. (Doc. 43, ¶ 29); *see infra*.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[9] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

---

[9] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

III.   **DISCUSSION**

In this motion, Defendants assert at the outset that they are entitled to summary judgment because Warrington did not exhaust his administrative remedies. (Doc. 38, at 5-6). Alternatively, Defendants submit that (1) they did not fail to protect Warrington because they were not aware of the risk Fry posed to Warrington because the attack was unprovoked and that they did not deliberately ignore the presence of a weapon; (2) they did not create the danger that caused Warrington's injury because the harm was not foreseeable and none of Defendants' actions shocked the conscience; and (3) the allegations against them are supervisory and do not allege personal liability.[10] (Doc. 38, at 6-15). In response, Warrington states that (1) he had no remedy under the available administrative procedures as his situation excused him from exhausting his administrative remedies; (2) the Defendants created a danger because the conduct by Fry was foreseeable because his release back into general population put everyone at risk; (3) he "suffered an objectively, sufficiently serious deprivation when Defendant Salamon and Defendant Ferguson released Inmate Fry to Plaintiff's cell block in general population" given Fry's propensity for violence; and (4) Defendants had notice of Fry's continued threat to others. (Doc. 44, at 7-12).

---

[10] As the Court finds that Warrington has failed to demonstrate a genuine issue of material fact regarding his Eighth Amendment failure to protect claim and his Fourteenth Amendment state-created danger claim, the Court declines to address Defendants' argument regarding personal liability. (Doc. 38, at 15).

A. SECTION § 1983 CLAIMS

Warrington's complaint asserts federal civil rights claims brought pursuant to 42 U.S.C. § 1983. Section § 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
> 42 U.S.C. § 1983.

Section § 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a section 1983 claim, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The Eighth Amendment protections that Warrington invokes are incorporated against state actors through the substantive due process clause of the Fourteenth Amendment. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463

B. ADMINISTRATIVE EXHAUSTION

Defendants argue that summary judgment as to Warrington's claims should be granted on the sole basis of Warrington's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). (Doc. 38, at 5-6). Specifically, Defendants contend that Warrington did not file a grievance or seek an extension to file a grievance regarding the assault that occurred. (Doc. 38, at 5-6). Defendants additionally assert that Warrington did not "identify anyone who was personally responsible for the incident." (Doc.

8

38, at 6). In response, Warrington argues that the PLRA "requires an inmate to exhaust 'such administrative remedies as are available' before filing a lawsuit challenging prison conditions" and that the grievance system policy "is not intended to address incidents [of an urgent or emergency nature]." (Doc. 44, at 7). Additionally, Warrington states that the grievance procedures do not permit monetary recovery. (Doc. 44, at 7). Warrington concludes that his filing of a grievance was not necessary because "[n]o administrative remedy existed that would have undone the assault suffered by [Warrington] after the fact, so he was under no obligation to exhaust the administrative grievance process because none was available to him." (Doc. 44, at 8).

"[D]ismissal on exhaustion grounds is best reserved for the summary judgment stage of proceedings." *Talley v. Pa. Dept. of Corr.*, No. 3:16-CV-02074, 2017 WL 7806650, at *7 (M.D. Pa. Dec. 20, 2017). As a preliminary matter, the Court considers whether Warrington is bound by the exhaustion requirements of the PLRA. The PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a) (emphasis added)

"There is one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner." *Downey v. Pa. Dept. of Corr.,* 968 F.3d 299, 305 (3d Cir. 2020) (citing *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016)); *see also Johnson v. Wireman,* 809 F. App'x. 97, 100 (3d Cir. 2020) ("[A] prisoner need exhaust only available administrative remedies." (internal quotations omitted)). If an administrative remedy "operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when

9

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation" it is considered unavailable. *Shifflett v. Korzniak,* 934 F.3d 356, 365 (3d. Cir. 2019) (internal quotations omitted); *see also Downey*, 968 F.3d at 305; *Ross*, 136 S. Ct. at 1859-60.

Here, Warrington contends that due to the urgent nature of his injuries and the lack of adequate restitution available for Warrington's type of claim, filing a grievance procedure would have operated as a "dead end." (Doc. 44, at 7-8). Warrington contends that "[n]o administrative remedy existed that would have undone the assault suffered by [Warrington]" and that the grievance procedures do not provide monetary relief. (Doc. 44, at 7-8). Warrington quotes the policy in question, stating:

> [t]he Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate. It is not meant to address incidents of an urgent or emergency nature including allegations of sexual assault. . . When faced with an incident of an urgent or emergency nature, the inmate shall contact the nearest staff member for immediate assistance.

(Doc. 44, at 7).

In *Downey*, the Third Circuit examined the same policy and defined "incidents of an urgent or emergency nature" as "one that requires immediate attention." 968 F.3d at 306. The Third Circuit went on to determine that because of the prisoner's severe medical condition requiring immediate care, he was only required to "contact the nearest staff member for immediate assistance" and he did not need to submit a grievance. *Downey*, 968 F.3d at 307-07. "The grievance procedures are clear. Individuals dealing with urgent situations are not required to file a grievance." *Downey*, 968 F.3d at 307. Thus, prisoners who suffer from

conditions that require immediate attention are "exempt from the typical grievance steps." *Downey*, 968 F.3d at 307.

Here, Warrington was assaulted and rushed to the hospital in a helicopter. (Doc. 35-1, at 28-29). His condition was clearly urgent in nature as his injuries required him to be transported to the hospital immediately after the attack. (Doc. 35-1, at 28-29). As his condition required immediate attention, he is exempt from pursing the typical grievance steps. *See Downey*, 968 F.3d at 307. Accordingly, the Defendants are not entitled to summary judgment as to Plaintiff's claims on exhaustion grounds under the PLRA.

    C. EIGHTH AMENDMENT FAILURE TO PROTECT

Defendants submit that they are entitled to summary judgment on Warrington's Eighth Amendment failure to protect claim because there was no indication that Fry would attack Warrington. (Doc. 38, at 11). Defendants state that they could not be deliberately indifferent to the harm posed by Fry to Warrington because there was no evidence to indicate that Fry would attack Warrington and that any failure to detect a weapon would be negligence at most. (Doc. 38, at 7-11). Warrington argues that Defendants had knowledge of the risk Fry posed to the inmates housed in general population and disregarded that risk when they released Fry into general population. (Doc. 44, at 11).

The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment. U.S. Const. Amend. VIII. To prevail on any Eighth Amendment claim, an inmate must meet both an objective and subjective requirement: (1) the alleged deprivation must be sufficiently serious; and (2) the defendant official must have "a sufficiently culpable state of mind." *See Farmer v. Brennan*, 511 U.S. 825, 834. Further, to survive summary

judgment on a failure to protect claim brought under the Eighth Amendment, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

A prison official acts with a sufficiently culpable state of mind where the official displays deliberate indifference to the inmate's safety by recklessly disregarding a known and substantial risk of harm to the inmate. *Farmer*, 511 U.S. at 836. This can be established by "circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2011) (citing *Farmer*, 511 U.S. at 842); *see also Hamilton*, 117 F.3d at 747 ("A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence."). However, a prison official does not violate the Eighth Amendment's proscription of cruel and unusual punishment by failing "to alleviate a significant risk that he should have perceived but did not . . . ." *Farmer*, 511 U.S. at 838; *see also Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986).

A defendant may rebut a *prima facie* claim of deliberate indifference by "establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." *Beers-Capitol*, 256 F.3d at 133; *Farmer*, 511 U.S. at 845 ("[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause."). In *Blackstone v. Thompson*, the Third Circuit held that an inmate who has a history of violence but has "no longstanding, pervasive, well-documented, or previously noted tensions" with another inmate is insufficient

to demonstrate "the inference that an excessive risk was present." 568 F. App'x 82, 84 (3d Cir. 2014). The inmate in *Blackstone* failed to provide "evidence of [the defendant's] culpable state of mind" when he presented facts that demonstrated that the inmate who assaulted him had "some history of violence [that] might [present a risk of] an attack [on] another inmate for an unknown reason." 568 F. App'x, at 84. Additionally, the Third Circuit found that a lack of evidence indicating that the officials were told of a "specific incident or cause of tension between the [inmates] from which a greater inference of risk could be drawn" was insufficient to demonstrate the defendant's deliberate indifference. *Blackstone*, 568 F. App'x at 84. The Third Circuit affirmed the district court's granting of summary judgment regarding the inmate's claim that the defendant was deliberately indifferent to an excessive risk to his safety because the inmate had "not pointed to evidence of deliberate indifference." *Blackstone*, 568 F. App'x, at 84-85.

In *Straker v. Valencik*, the Court granted judgment in favor of a prison official regarding an inmate's claim that the prison official was deliberately indifferent to a serious risk of harm because the allegation was too speculative when there was "no indication . . . that [the prison official] was aware of any threats of physical harm or violence toward [the inmate] that were disregarded." No. 3:18-cv-1569, 2021 WL 1134591, at *7-*8 (M.D. Pa. Mar. 24, 2021). The plaintiff in *Straker* alleged that a prison official was aware of another inmate's violence and failed to protect the plaintiff from the risk of harm posed by the other inmate resulting in the plaintiff's assault. 2021 WL 1134591, at *8. The Court found that an awareness of an inmate's propensity for violence, without any other evidence indicating that the inmate would harm another particular inmate is insufficient to demonstrate deliberate indifference and granted

13

summary judgment in favor of the prison official regarding the plaintiff's failure to protect claim. 2021 WL 1134591, at *8.

Here, Warrington contends that Defendants were aware of Fry's risk of violence and failed to protect Warrington against the assault. (Doc. 7, at 6; Doc. 44, at 11). Warrington did not know Fry and said that "there was nothing about Fry's appearance or actions that concerned him before the incident." (Doc. 35, ¶¶ 4-5; Doc. 43, ¶¶ 4-5; Doc. 35-1, at 9-12). Warrington had not been previously threatened by Fry nor did Warrington belong to a group that was frequently targeted in the prison system. (Doc. 35, ¶ 12, 15; Doc. 43, ¶¶ 12, 15; Doc. 35-1, at 20, 22-23). Additionally, Warrington stated that "there were times where inmates were attacked by other inmates and no one knew why it happened" and provided evidence that Fry had a lengthy history of misconduct during confinement. (Doc. 35, ¶ 14; Doc. 43, ¶ 14; Doc. 35-1, at 21; Doc. 43-2, at 1-12).

Although it is clear that Fry had a history of misconduct, an inmate's propensity for violence does not provide prison officials with adequate notice that the inmate will attack another inmate without a more "particularized and plausible connection." *See Blackstone*, 568 F. App'x at 84. Warrington submits that the prison officials were aware of Fry's risk of violence, however the record also reflects that he was not personally threatened by Fry. (Doc. 35, ¶12; Doc. 43, ¶ 12; Doc. 35-1, at 20). The evidence in the record also establishes that Warrington did not know Fry before the incident, thus there could not have been any previous incidents for Defendants to infer that the attack would occur. (Doc. 35, ¶ 4-5; Doc. 43, ¶4-5; Doc. 35-1, at 9-12). Additionally, there is no evidence in the record of any indication that Fry would use a weapon to assault Warrington. (Doc. 7, at 6; Doc. 35-1, at 9-12). A risk of harm

"that an inmate with some history of violence might attack another inmate for an unknown reason" is too speculative to establish that the defendants were deliberately indifferent. *Blackstone*, 568 F. App'x at 84. Warrington has failed to present sufficient evidence to support his claim of deliberate indifference against Defendants as the evidence in the record does not establish that there was any indication that Fry would specifically attack Warrington. *See Blackstone*, 568 F. App'x at 84; *Straker*, 2021 WL 1134591, at *8. As such, summary judgment is granted in favor of Defendants as to Warrington's Eighth Amendment failure to protect claim. *See Straker*, 2021 WL 1134591, at *8.

### D. STATE-CREATED DANGER

Defendants also submit that Warrington is unable to establish, based on the undisputed facts in the record, that the harm from which he suffered was foreseeable. (Doc. 38, at 13). Warrington contends that the harm from which he suffered was "foreseeable and fairly direct" as Fry had a propensity for misconduct while incarcerated and was placed in SCI-Benner for an incident of similar nature to the assault on Warrington. (Doc. 44, at 9). Additionally, Warrington states that Fry had requested self-confinement and a transfer "due to problems with other inmates on his cell block" and that after a sanction and subsequent time spent in the Restrictive Housing Unit ("RHU"), he was released back to general population where he assaulted Warrington. (Doc. 44, at 9-10). Warrington states that these actions demonstrate Defendants' willful disregard to the risk that Fry imposed upon other inmates. (Doc. 44, at 10).

"When the affirmative exercise of state authority either results in a citizen's injury or leaves a citizen more vulnerable to injury at the hands of a third party, the government

contravenes the substantive due process protections of the Fourteenth Amendment" and a state created danger claim arises. *D.N. ex rel. Nelson v. Snyder*, 608 F. Supp. 2d 615, 624 (M.D. Pa. 2009) (citing *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006)). In order to establish a claim for state created danger, a plaintiff must demonstrate four elements:

> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed.
>
> *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

A plaintiff must establish that the harm from which he suffered was foreseeable by indicating "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Bryan v. Erie Cty. Office of Children & Youth, C.A.*, No. 03-259, 2012 WL 993245, at *22 (W.D. Pa. Mar. 22, 2012) (quoting *Phillips*, 515 F.3d at 238). "Where the injury experienced by a detainee is at the hands of another prisoner, § 1983 liability may be imposed on prison officials 'if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials.'" *Eichelman v. Lancaster Cty.,* 510 F. Supp. 2d 377, 389 (E.D. Pa. 2007) (quoting *Davidson v. O'Lane,* 752 F.2d 817, 828 (3d Cir. 1984). The plaintiff must demonstrate that the "defendant exercised his or her authority to create a foreseeably dangerous situation . . . [and that there is a] direct causal relationship between the affirmative act of the state and plaintiff's harm . . . [rendering] the plaintiff more vulnerable to danger than had the state not acted at all." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006) (internal quotations omitted). To rise to the level of a due process violation, the

action by the defendant must "shock the conscience." *Miller v. City of Phila.,* 174 F.3d 368, 375 (3d Cir. 1999). Although the level of wrongfulness depends upon the circumstances surrounding the case, negligence cannot be enough to rise to the appropriate level of wrongfulness. *See Miller,* 174 F.3d at 375; *see also Misero v. Christine,* No. 12-7081, 2014 WL 2915888, at *6 (E.D. Pa. June 25, 2014).

In *Tri Thanh Nguyen v. Franklin County*, the Court found that the Defendants "were not sufficiently culpable for [the plaintiff's] injury and that it was not sufficiently foreseeable for the state-created danger doctrine to apply." 2012 WL 1378679, at *5 (M.D. Pa. Apr. 20, 2012). The plaintiff in *Nguyen*, who was a protective custody inmate, was assaulted by another inmate while being held in a holding cell awaiting a court appearance. 2012 WL 1378679, at *1. Although an inmate witness to the attack stated that the assaulting inmate had "a history of violence" the plaintiff had not informed the defendants that he was having a problem with the assaulting inmate and did not "advis[e] anyone during transport that he was concerned for his safety." *Nguyen,* 2012 WL 1378679, at *5. The Court held that because the defendants "were unaware that [the plaintiff] was in any particular danger" they did not possess "an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Nguyen,* 2012 WL 1378679, at *5-*7; *see also Phillips,* 515 F.3d at 238.

Here, a relationship exists between Warrington and Defendants because he was incarcerated by the Commonwealth. (Doc. 38, at 13; Doc. 44, at 8); *see DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) ("In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf— through incarceration, institutionalization, or other similar restraint of personal liberty—

17

which is the 'deprivation of liberty' triggering the protections of the Due Process Clause . . . ."). However, the record does not demonstrate that the harm from which Warrington suffered was foreseeable or that Defendants acted with willful disregard to his safety. *See Phillips,* 515 F.3d at 235.

First, even in viewing the record in the light most favorable to Warrington, the record before the Court does not demonstrate any disputed material fact that the attack by Fry was "foreseeable and fairly direct." *See Phillips,* 515 F.3d at 235. Unlike the Plaintiff in *Nguyen*, Warrington was not in protective custody before the incident and did not belong to any class that was particularly susceptible to inmate violence. (Doc. 35, ¶ 15; Doc. 43, ¶ 15; Doc. 35-1, at 22-23, 50-51). Warrington states that he did not know Fry nor did he fear that Fry would attack him. (Doc. 35, ¶¶ 4-5, 12; Doc. 43, ¶¶4-5, 12; Doc. 35-1, at 9-12, 20). As discussed *supra*, there is no dispute of material fact that establishes in the record that Defendants knew that Fry posed a specific risk to Warrington. Thus, the undisputed material facts before the Court do not establish that Fry's attack on Warrington could have been foreseeable as there was no indication that Fry would attack Warrington, specifically. (Doc. 35, ¶¶ 4-5, 12; Doc. 43, ¶¶4-5, 12; Doc. 35-1, at 9-12, 20); *see also Nguyen,* 2012 WL 1378679, at *5-*7.

Even if the record contained facts which support Warrington's contention that the attack by Fry was foreseeable, it fails to show any issue of fact that the Defendants acted with a "degree of wrongfulness necessary to reach the 'conscience-shocking' level." *Miller,* 174 F.3d at 375. The record reflects that Defendants did not act with willful disregard to Warrington's harm because they could not have known that Warrington would be attacked by Fry as there was no indication of animosity between the two inmates. (Doc. 35, ¶¶ 4-5, 12;

Doc. 43, ¶¶4-5, 12; Doc. 35-1, at 9-12, 20); *see also Nguyen,* 2012 WL 1378679, at *5-*7; *Misero,* 2014 WL 2915888, at *7 ("[P]laintiff was the victim of a random criminal act by others rather than of any deliberate actions on the part of the . . . Defendants"). Additionally, in so far as Defendants failed to detect the weapon which Fry used, "imperfect enforcement of [a] policy shows, at most, negligence by the defendants, rather than deliberate indifference." *See Misero,* 2014 WL 2915888, at *7 (citing *Davis v. Lackawanna Cty. Prison Bd.*, No. 4:CV-07-1682, 2010 WL 1390880, at *4 (M.D. Pa. Mar. 31, 2010) (finding that the defendants' actions constituted negligence, at most, regarding the plaintiff's claim that another prisoner was allowed to come into contact with a razor and assault the plaintiff)).

Accordingly, the undisputed material facts in the record before this Court show that Warrington has failed to establish a state-created danger claim and summary judgment shall be granted in favor of Defendants. *See Nguyen*, 2012 WL 1378679, at *5-*7; *see also Sanford v. Stiles*, 456 F.3d 298, 311 (3d Cir. 2006).

IV. **CONCLUSION**

For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 33).

An appropriate Order follows.

Dated: February 22, 2022          *s/ Karoline Mehalchick*
                                  **KAROLINE MEHALCHICK**
                                  **Chief United States Magistrate Judge**